UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION



CHRISTOPHER M. FORREST-BEY SR. )
PLAINTIFF, )
Vs. )
ARMON BUDISH )
CUYAHOGA COUNTY EXECUTIVE, )
)
KENNETH MILLS )
FORMER DIRECTOR OF REGIONAL )
CORRECTIONS CENTER, )
)
ALW O'DONNELL )
WARDEN OF CUYAHOGA COUNTY )
CORRECTIONS CENTER, )
)
ERIC IVEY )
FORMER WARDEN OF CUYAHOGA )
COUNTY CORRECTIONS CENTER, )
)
ANNETTE CHAMBER SMITH )
DIRECTOR OF THE OHIO DEPARTMENT)
OF REHABILITATION AND )
CORRECTIONS, )
)
MARY LOUSIE MADIGAN )
CUYAHOGA COUNTY SPOKESWOMEN, )
)
CLIFFORD PINKNEY )
FORMER CUYAHOGA COUNTY SHERIFF,)
)
WANDA GORDAN AND JOHN HENNESSEE)
CUYAHOGA COUNTY MAILROOM CLERK,)
)
METRO HEALTH MEDICAL STAFF IN )
CUYAHOGA COUNTY, )
DEFENDANT. )

1:20 CV 801

CASE: _____

JUDGE POLSTER

MAG. JUDGE BAUGHMAN

TITLE 42 USC SECTION
1983 CIVIL ACTION COMPLAINT

FILED
APR 09 2020
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

JURY TRIAL DEMANED

## I. JURISDICTION AND VENUE

1.This is a civil action brought pursuant to Title 42 USC Section 1983 to redress the deprivation under color of law of right, privileges, and immunities guaranteed by the Constitution of the United States. This Court has jurisdiction under Title 28 USC Section 1331 and 1343(a)(3).

2.The Northren District of Ohio is an appropriate venue under Title 28 USC section 1391(b)(2) because it is where the events giving rise to this claim(s) occurred.

## II. PLAINTIFF

3.Plaintiff, Christopher M. Forrest-Bey Sr., is and was, at all times mentioned in this complaint, a pretrial detainee being held in the custody of Cuyahoga County Sheriff Department, at Cuyahoga County Corrections Center, Post Office Box 5600 Cleveland, Ohio 44101.

## III. DEFENDANTS

4.Armon Budish, 2079 E. 9th St., Cleveland, Ohio 44115, is and was at the time of this complaint, the Cuyahoga County Executive. He is being sued in his individual and official capacity.

5.Kenneth Mills,38749 Amberwood Drive Avon, Ohio 44011, was, at the time of this complaint, the Cuyahoga County Director of Regional Corrections. He is being sued in his individual and official capacity.

6.Alw O'Donnell,1215 West.3rd.St, Cleveland, Ohio 44113, was, and is at the time of this complaint, the Cuyahoga County Corrections Center Deputy Warden. He is being sued in his individual and official capacity.

7.Eric Ivey, 1691 Oakham Road Euclid, Ohio 44117, was, at the time of this complaint, the Cuyahoga County Corrections Center Warden. He is being sued in his individual and official capacity.

8.Annette Chamber Smith,4545 Fisher Road, Columbus, Ohio 43228, was, at the time of this complaint, the Director of the Ohio Department of Rehabilitation and Corrections. She is being sued in her individual and official capacity.

9.Mary Lousie Madigan,2079 East 9th Street, Cleveland, Ohio 44115,was, at the time of this complaint, the Cuyahoga County Spokes-woman. She being sued in her individual and official capacity.

10.Clifford Pinkney 1215 West 3rd St., Cleveland, Ohio 44113 was, at the time of this complaint, the Cuyahoga County Sheriff, He being sued in his individual and official capacity.

11.Wanda gordan and John Hennessee, 1215 west 3rd St. Cleveland Ohio 44113, was, at the time of this complaint, the mailroom Clerk's of the Cuyahoga County. They being sued in they individual and official capacity.

official capacity.

13. Metro Health Medical Staff, 1215 West. 3rd St., Cleveland, Ohio 44113,was, at the time of this complaint, was the medical staff for the Cuyahoga County. They being sued in they individual and official capacity.

14. During all times mentioned in this complaint, each Defendant while acting under color of state law, and while performing their discretionary functions, acting with sufficiently culpable state of mind, did knowingly and intentionally show a deliberate indifference to Plaintiff's right to a civilized measure of life's necessities and contemporary standard of decency.

## IV. FACTS
### (A) Red Zone

15. In or about September 19th, 2017, the Plaintiff was being held in the Cuyahoga County Corrections Center ("CCCC") as a pretrial detainee, under the directcusttody, control and supervision of (former) Director of Regional Corrections, Kenneth Mills, Cuyahoga County Sheriff, Clifford Pinkney,and (former) Cuyahoga County Corrections Center Warden, and Alw O'Donnell Warden.Also the Cuyahoga County Executive Armon Budish.

16. The Plaintiff remained under the direct custody, control and supervision of Mills, Pinkney, Ivey, and O'Donnell until August 1st, 2019 when i went to Lorain Correctional Institution.

17. Plaintint was assigned to houing unit (Pod) 11-C, then move to 11-B, then to 8-G, then 9-C, then 8-E, and then 10-E.

18. Plaintiff was immediate introduced to "Red Zone." Which will have a exhibit that have the dates and time that will be filed with this complaint.

19. Red Zone is an unwriten "lockdown" policy implemented and/ or enforced by Defendant Pinkney, Mills, and Ivey to account for the severe shortage of correctional officers at the CCCC.

20. Staff shortage at the CCCC was a direct result of Defendants Mills, Ivey, O'Donnell,Pinkney, and Budish greed, negligence, wonton recklessness and total disregard to the health and wellbeing of inmates entrusted to their care.

21. As a direct result of the staff shoetage, a substantial safety and security risk was created by Mills, Ivey, O'Donnell, Pinkney, and Budish at CCCC. In addition to a very hostile and explosive environment for inmates as well as staff.

22. As a direct result of Red Zone, the Plaintiff and those similarly situated were confined to their cells for as long as 27 hours at a time.

23. As a direct result of Red Zone, the Plaintiff and those similarly situated were denied the opportunity to participate in receation and exercise. Furthermore, exercise and receation was substantially limited to approximately twice a month.

24. As a direct result of Red Zone, the Plaintiff and those similarly situated were denied the opportunity to shower.

25. As a direct result of Red Zone, the Plaintiff and those similarly were denied the opportunity to contact their attorneys.

26. As a direct result of Red Zone one correctional officers was directed to oversee two pods and at times even four pods instead of one, leaving the other pods unsupervised for an extended period of time. This is perhaps the most favorable time for inmates contemplating suicide or any other devious act(s).

### (B) RECREATION/EXERCISE

27. CCCC policy provides: "Housing units shall be provided with television for recreation. In addition, exercise periods are on a posted schedule. Some of those activities will be taken place in the indoor/outdoor recreation area."

28. There were no posted schedules for exercise in the housing units.

29. There was no outdoor recreation or exercise.

30. The television for recreation was/is 13 inches in size

31. As a direct result of the Red Zone Policy, Plaintiff and those similarly situated opportunity to exercise was substantially limited to approximatele twice a month.

32. When Plaintiff complained to the corpor and the unit officer he was reminded that there were not enough staff available to take his unit to recreation.

### (C) OTHER INHUMAN CONDITIONS PLAINTIFF WAS SUBJECTED TO

33. Defendant Mills, Ivey, and O'Donnell failed to provide sufficient lighting in the cells Plaintiff and those similarly situated were housed.

34. The initial design of the cells included two lights to ensure that there was sufficient lighting in the cells for inmates. However, one of the lights has since been removed to saving on cost and repairs.

35. Defendant Mills, O'Donnell, and Ivey failed to provide a civilized place to eat. Plaintiff and those similarly situated were forced to eat with their food tray on the toilet or on the sink above the toilet (all while standing).

36. Although there is ample seating in the pod designed for inmates to eat, write, etc., it is not utilized because of Red Zone.

37. Defendant Mills, O'Donnell, and Ivey failed to establish a grievance procedure or any other procedure to resolve complaints filed by Plaintiff and those similarly situated, attempting to address the conditions of their confinement

(4)

38. Defendant Mills, O'Donnell, and Ivey failed to proide heat in the pods and cells because it was too costly to replace the pipes.

39. Defendant Mills, O'Donnell, and Ivey failed to maintain a clean and sanitary living area for inmates by refusing to order that the clogged vents be cleaned.

40. Plaintiff has sent a number of request to staff concerning the unconstitutional conditions he was subjected to at CCCC. Plaintiff has sent a number of complaints by US Mail to jail officials, including, but not limited to, Kenneth Mills, Alw O'Donnell, Eric Ivey, Armon Budish, Clifford Pinkney, administrative judge and the chief inspector over a 21-month period, to no avail.

## (D) DERELICTION OF DUTY

41. Defendant Smith, during the time of the complaint, was entrusted with the supervisory authority of CCCC pursuant to ORC Section 5120.10.

42. Defendant Smith duties encompassed the duty to ensure that during the times mentioned in this complaint CCCC was in compliance with the minimum standards for jails in Ohio.

43. Defendant Smith duties encompassed the duty to ensure the alternative policies and/or practices, including the CCCC unwritten Red Zone policy complied with the constitutional standards of the minimum standards for jails in Ohio.

44. Defendant Smith duties encompassed the duty to ensure that Plaintiff and those similarly situated rights under the Eighth Amendment were not abridged.

45. Defendant Smith duties encompassed the duty to ensure that Plaintiff and those similarly situated rights to a contemporary standard of decency and a minimum civilized measure of life necessities were not vilated.

46. Defendant Smith duties encompassed the duty to ensure that the transfer of over 50 correctional offices from CCCC did not place in jeopardy the safety and security of staff and inmates at the CCCC.

47. Defendant Smith duties encompassed the duty to ensure that the under staffed and overcrowed conditions at the CCCC did not reach a level that affected the orderly running of the facility.

## (E) FRAUD DECEIT AND MISREPRESENTATION

48. Defendant Madigan conspired with Defendant Mills, O'Donnell Ivey, Pinkney, Budish, and Branch to fraudulently misrepresent the

inadequate and sbstandard condition of poorly operated and mismanaged CCCC.

49. Defendant Magigan knew first hand and deliberately ignored the real conditions at CCCC. She personally knew or had reasons to know of the numerous complaints that had been filed by inmates. But most of all, the complaint filed by the Ohio Patrolmen's Association and American Correctional Association concerning the conditions at CCCC. However, Defendant Madigan passed along information that she knew was false and would be deterimental to inmates housed in the CCCC.

50. Defendant Madigan fradulent misrepresentation aided in endangering the safety of Plaintiff, those similarly situated and employees.

51. Defendant Madigan knew of the numerous assaults by employees known as the "Men in Black" contaminated water, black mold, inadequate medi- meals, unsafe food service conditions, understaffing, over crowdedness, deaths, inmate confined to their cells for extended periods of time, inmates being denied medical attention, recreation and exercise. But took no action to correct and/ or bring to the attention of the public the unconstitutional substandard conditions which denied Plaintif and those similarly situated a contemporary standard of decency and minimum civilized measre of life necessities, to lights. Instead conspired to disseminate disingenuous information to the public she knew was contrary to the truth.

### (F) MAILROOM

52. They was giving the prosector my mail to use as evidence, never having a county order to do so. They had a letter i wrote my mother from the county that i sent her and she never got. Do to the fact they took it and gave it to the prosecutor. Which in fact voilated my Const- itutional Right.

53. Mail taking a week or long to get to me, and going out to my family, friends, and my lawyer.

54. When I wrote a kite asking about this isse they told me to write the post office.

55. Then on two different times I sent mail out it took two weeks for them to recive it. The first time was to my layer, nephew, and my brother-in-law. I sent them out on 9/10/18, they did not recived them until 9/22/18. That wasnt until I wrote a kite to the corporl and the mailroom about the issue for them to send it out. I wrote the kite about it on 9/20/18, and 2 days later they had my mail. Next, I sent my family some Christmas cards. I sent out 22 cards on the 12/4/18. Now 3 out of 22 made it to where it was send on 12/6/18. The other 19 cards did not make it until 12/22/18. When they all was sent out at the same time and same day. I had also wrote a letter to United States District Judge James S. Gwin about this and a number of other issues.

### (G) METRO HEALTH MEDICAL STAFF IN CUYAHOGA COUNTY

57. They refusing the inmates medical care. Refusing to give inmate meds for medical issues.

58. Then when you write grievances on the problem they act

as if they did not recived the kite, or they act as if they give it
back to pod officer and the pod officer didnt give it to inmate.

59. Then they tell you that you have to buy meds from the
commissary. You tell them you do not have the money to pay for meds,
then they pull up your account and tell you how much you spent at the
commissary.

60.One time i slipped and fall on the floor and hurt my foot,
so I had the C.O Young call don to the medical. They asked him was I
bleeding? Then told him to tell me to write a kite. So on July 16, 2019
I sent a kite, which was never answered. So on July 21,2019 I wrote a
grievance on a kite. They sent a response back on July 22, 2019 telling
me appointment was made. So then on July 27, 2019 and I still haven't
been to the appointment. I left the cuyahoga county jail on August 1st,
2019 and still was not seen by the medical staff about me slipping on
the county wet floor.

### (V) LEGAL CLAIM

61. Plaintiff realleges and incorporate by reference paragraph
1 to 60.

62. Defendant Mills acted with deliberate indifference to
Plaintiff's Eighth Amendment Constitutional Rights against cruel and
unusual punishment when he focused solely on turning the housing of
inmates into a lucrative business venture, irrespective of Plaintiff
health, Safety security, contemporary standard of decency and a minimum
civilized measure of life necessities.

63.Defendant Mills reckless policies, procedures and ideas
(written and unwritten) to contract, purchase, rent, and/or lease Euclid
City Jail, Bedford Heights City Jail and Cleveland City Jail, knowing
or have reasons to know that the CCCC was significantly overcrowded by
approximately 600 inmates and under staffed by approximately 100 staff.

64.Defendant Mills further exacerbated the unsafe, unsecure
and dangerous conditions at the CCCC by implementing a hiring freeze.

65.Defendant Mills, O'Donnell, and Ivey acted with reckless
disregard and with deliberate indifference to Plaintiff safety and
security when they conspired to transfer over 50 correctional officers
from CCCC to the newly opened Bedford Heights facility knowing or having
reasons to know that such a transfer would leave the CCC in a dangerous
peril for staff and inmates.

66. Defendant Mills, O'Donnell, and Ivey reckless and deliberate
indifference policies, procedures and ideas (written and unwritten) created
the unconstitutional and inhumane conditions at the CCCC that caused
Plaintiff to be locked in his cell for long as 27 hours without recreation,
exercise, shower or the opportunity for Plaintiff to call his attorney
or maintain family ties.

67.Defendant Mills, O'Donnell, and Ivey knew or should have
known that their actions and/or inactions would create inhumane, unsafe

unsecure, unhealthy and dangerous conditions of confinement for the Plaintiff and those similarly situated and employees.

68. Defendant Mills, O'Donnell, and Ivey through their own individual and collective actions and/ or inactions violated Plaintiff's Eighth Amendment Rights against cruel and unusual punishment by failing to act have the power to and or authority to do so, when the inhumane, unsafe, unsecure, unhealty and dangerous conditions arising at the CCCC was brought to their attention by Plaintiff, the Patrolmen's Association, the American Correctional Association, staff, inmates and other sources knowing or having reasons to know that serious harm would result.

69. Defendant Mills, O'Donnell, and Ivey created and explosive and hostile environment which is a direct result of the experiment policies. Such as: Red Zone.

70. Defendant Mills, O'Donnell, and Ivey reckless and deliberate indifference Red Zone policy is the sole cause of Plaintiff being deprived of his right to recreation and exercise.

71. Defendant Mills, O'Donnell, and Ivey reckless and deliberate indifference Red Zone policy has been the sole cause of Plaintiff being deprived of his rights to communicate with his attorney by telephone on a regular basis. Because during Red Zone (which was practically every day) Plaintiff was locked down during business hours.

72. Defendant Mills, O'Donnell, and Ivey acted with deliberate indifference to Plaintiff's constitutional right to visit with his attorney in private by failing to provide space.

73. Defendant Mills, O'Donnell, and Ivey acted with deliberate indifference to Plaintiff's right to a minimum measure of life's necessities by failing to provide heat, clean air and a place to eat and write.

74. Defendant Smith acted with deliberate indifference to Plaintiff constitutional rights to a contemporary standard of decency by failing to exercise her supervisory oversight authority.

75. Defendant Smith acted with reckless disregard by failing to ensure that strict compliance with minimum standards for CCCC, insofar as how it relates to minimum measure of life's necessities such as recreations, exercise, inhumane conditions adequate meals safety security.

78. Defendant Smith condoned, encouraged and supported the inhumane practices, unwritten polices and unsafe conditions at the CCCC by continuously neglecting to exercise her supervisory authority.

79. Defendant Smith dereliction of duty resulted in Defendants being able to implement and operate under the CCCC policies, procedures and practices that were contrary to the minimum standards, contemporary standard of decency and minimum civilized measure of life necessities crating serious situations and circumstances that seriously affected not only the safety and security of CCCC but also the health safety and wellbeing of Plaintiff and those similarly situated.

80. Defendant Smith failure to exercise her supervisory power was in fact a green light for Mills, O'Donnell, Pinkney, and Ivey to operate CCCC with reckless disregards to basic human rights.

81. Defendant Magigan acted with deliber ate indifference by conspiring to cover up the poorly operated and mismanagement of CCCC.

82. Defendant Madigan acted with reckless disregards to Plaintiff basic human rights by conspired with Defendants Mills, O'Donnell, Ivey, Pinkney, Budish, and Branch to fraudulently misrepresent the inadequate and substandard condition of the poorly operated and mismanaged CCCC.

83. Defendant Madigan acted with evil intent to deprive Plaintiff of a civilized measure of life's necessities and a contemporary standard of decency by deliberately ignored the real conditions of the CCCC and passing on a false narrative that the consitions at CCCC were humane. Defendant Madigan action placed Plaintiff's life in danger.

84. Defendant Madigan fraudulently misrepresented aided in endangering the safety of Plaintiff, those similarly situated and employees.

85. Defendant Wanda Gordan and John Hennessee contiued to give the Plaintiff mail to the prosecutor. Violated Plaintiff Constitutional Rights of getting a court order from the Judge to do so.

86. Defendant Wanda Gordan and John Hennessee contiued to hold Plaintiff mail so that he wouldnt get his mail for at times 2 or 3 week. So it made it hard for the Plaintiff to stay in touch with family, friends, and lawyer.

87. Defendant Wanda Gordan and John Hennessee contiued to hold my out going mail for weeks at a time. On a couple different time. A my lawyer and family could not get they mail in the proper time fame.

88. Defendant Metro health medical staff for the Cuyahoga county refuse Plaintiff medical care.

89. Defendant Metro health medical staff refuse to answer to kite and grievances.

90. Defendant Metro health medical staff refuse to see Plaintiff when he slip and fell on the wet County floor.

## (VI) PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Honorable Court enter judgment as follow:

91 Granting Plaintiff a declaration that the acts and omission described herein violated his rights under the United States Constitutional and laws of the United States;

92. Granting Plaintiff compensatory damages in the amount of $150,000 against Defendant Mills, O'Donnell, Ivey, Smith, Madigan, Pinkney Wanda Gordan , John Hennessee, and Metro health Medical Staff.

93. Granting Plaintiff punitive damages in the amount of $500,000 aginst Budish, Mills, O'Donnell, Ivey, Smith, Madigan, Pinkney, Gordan, Hennessee, and Metro Health Medical Staff for the Cuyahoga County jail;

94 Grant damages against each Defendant Jointly and severally;
95. Grant Plaintiff a jury trial on all issues triable by jury;
96. Grant Plaintiff recovery of his cost and all cost associated with this suit; and
97. Grant Plaintiff any additional relief the Court deems just, proper and equitable.

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.


FURTHER AFFIANT SAYETH NAUGHT:



Respectfully Submitted,

*Christopher M. Forrest-Bey Sr.*

3/15/2020
Executed

Christopher M. Forrest-Bey Sr.
A763516 Richland Corr. Inst.
1001 Olivesburg Dr. P.O.Box 8107
Mansfield, Ohio 44901




## NOTARY

SWORN AND SUBSCRIBED BEFORE ME ON THIS  3  DAY March 2020.

MY COMMISSION EXPIRES  2-26-22



*Monica Dejils*

(10)